Good morning, Your Honor. My name is Samuel Ogbu. Let me start by thanking the court for allowing me to come in to clarify some of the issues in this case. I also want to state up front that it's my intention to raise a few issues, given what I concede to be rather not the best of work done on the brief. And I do apologize for what I think wasn't the best of briefs that I could be defending. However, Your Honor, I'd like to point out that there are three issues that has to be resolved. And one of them being, it's our position, Your Honor, is that, one, the record of conviction submitted by the government in this case in proving the alleged conviction of the petitioner does not comport with the requirement in Taylor. It's not one – it does not have those documents that Taylor requires for proving convictions as a predicate for ineligibility, for relief, or even admission. Are you saying that there's no viable record of conviction? Yes, Your Honor. Why is that? Your Honor, if the court will be kind enough to look at Exhibit 4 of the appeal records, which is on page 48 to 86, what we have mainly are police reports printed from the police department records and an unsigned plea and arraignment form. There's also the information, the complaint in the criminal case. Well, first of all, did you raise any of this before the board? Your Honor. The fact that there wasn't a record of conviction as opposed to the fact that the record of conviction didn't establish a removable offense. I would say that it wasn't clearly raised, Your Honor. Sorry? It wasn't as clearly raised as it should be. It was implicitly raised in the notice of appeal. However, the judge accepted the records as proving that the conviction disqualified the petitioner. And that record was also construed by the BIA. But at no point did the petitioner concede that he was convicted. He did not concede that in his application for relief. He did not concede that in the hearing. Obviously, there wasn't enough interaction between him and the judge in the hearing. Well, I suppose even if he were convicted, the question would be whether it was of child abuse, as that term is used in the INA statute, whether there's a categorical match. And if there's not a categorical match, I suspect we would grant the petition for review and remand to the BIA. But then you'd still have the conviction problem, and they'd have to maybe go through the modified categorical approach to determine whether the child abuse fell within the category of child abuse under the NIA. So you're saying he shouldn't have to go back and do that because there's no record of his conviction in the first place. Yes, Your Honor. Let me ask you a question. I think both counsel or both my colleagues got to my point, but if I don't agree that there's a categorical match with that particular statute under which he was convicted, shouldn't I send it back to the BIA to determine whether there would be a modified categorical match rather than just decide it here? Your Honor, I believe you should. And that's another reason why I believe you should. In November, the attorney general came out with a further clarification of this issue, and that was in a case that came out in November 7, 2008, the matter of Christopher Silva Trevino. And he cited as a 24-INA decision 687, Attorney General 2008, in which case the attorney general appears to be even going beyond the modified categorical approach to now perhaps, I'm not sure yet because it's still being debated, introducing a second arm of that analysis, introducing a third arm, I'm sorry, of that analysis, now requiring that the judge or the court can now, if you don't find under the categorical and you don't find under the modified categorical, that you should, in his word, look at the record and consider any additional evidence deemed necessary or appropriate to resolve accurately the issue of moral turpitude. We'll probably have to wait for a case to come before us where that's happened. It hasn't happened yet in this case. It hasn't happened in this case. But this was a case that the attorney general took back from the BIA and used it to explain his position. So that would be perhaps, that should be the BIA's position if the case were to go back. So they have the third option which they didn't have when this case was decided. What was the third option, I'm sorry? The third option would be to now look at, according to the attorney general, to consider additional evidence deemed necessary, additional beyond what you have traditionally looked at, the record of conviction, the plea transcript, the judgment, and the jury instructions. To go beyond that, it seems to me that's what he's suggesting. Again, it hasn't been before you to determine whether it's reasonable or not. Another question I have, it seems to me in your brief you keep discussing moral character. But it seems to me that what we're really talking about here is the crime of child abuse, isn't it? We're not talking about a crime involving moral turpitude. We're talking about the crime of child abuse. We did that, Your Honor. And the reason being that we believe there is no distinction between, there's no distinction allowed to the government to choose to move to pretermit under 212 and allow 237. When the crime would have been a ground for the 212 moral turpitude pretermission. In a sense, I'm saying that the crime involved in this case, the crime of child abuse, alleged crime of child abuse, could also have been used if the government has chosen to go, to move under 212. But there's no authority for that, is there, the notion that the government can't choose one of two grounds if either of them would work? I couldn't come up with one, Your Honor. I'm not certain there is. But I think there's no reason, basis for the government to disallow petty theft exception to 212. One other question I have is that the Federal statute for crimes of domestic violence actually says any alien who at any time after admission is convicted of a crime of domestic violence, a crime of child abuse, child neglect or child abandonment is deportable. But your client was only charged with child abuse. Is that right? Yes, Your Honor. The reason I'm wondering is because child neglect might be a better fit for what actually happened here. And maybe if you looked at it through child neglect, I don't know whether it would be categorical. But that is what was charged, right? It was charged under 237. And I think Your Honor is right in looking at it that way. The reason why I didn't get to those analyses is because we have, it's our opinion that the document that the court construed would not even be sufficient to make those analyses, to make the analyses of categorical, modified or otherwise. But my colleague's question is pretty important because she's really suggesting, and that's why I was saying to you we're really looking at child abuse here. That's where the government went. Regardless of where you think they ought to have gone, they went with child abuse. If we took your argument that they ought to have to choose a certain one, one could just as easily say they could have, we ought to look at it under child neglect. And so I don't really believe that we can really go there. We have to look at child abuse itself, don't we? Yes, Your Honor. And if we do that, give me your best argument why the statute in California does not allege appropriately on a categorical approach child abuse. Because I've never heard that from you yet. Your brief all talks about crime of moral turpitude. Give me your best argument. Your Honor, it has to come from the nature of the, again, I'm trying to be careful not to discuss the conduct of the petitioner, which this analysis doesn't allow you to. But if we really look at the conduct of the petitioner being drunk, driving with his kids, essentially it's child neglect, not child abuse. Secondly, child abuse, the way it's written in the 273 of the Californian Code, requires some willfulness. Requires, I'm sorry? Some willfulness. But it also requires, according to the Attorney General, doesn't it, some injury? Some what, Your Honor? Injury. Other than these children may have been in danger, but they weren't injured. The children were not injured, right? They were not injured, Your Honor. Yes. But it says that if you allow them to put in a position where they could be injured. I understand that. And that's why it's covered under the California statute. But as I understand the Federal statute, that wouldn't comport with the Federal statute the way the Attorney General has construed the Federal statute, because there was not only no willfulness, but no injury. I agree, Your Honor. Okay. Thank you. And we'll give you a minute in rebuttal. Okay. Good morning, Your Honors. May it please the Court. Jem Sponzo on behalf of the Respondent. Petitioner was convicted of driving while under the influence and of a crime of child abuse. He was sentenced to 15 days in jail, three years of probation, and ordered to enroll in both alcohol and parenting education. You just assumed your premise, right? You said it was a crime of child abuse. The question is, was it a crime of child abuse? Absolutely it was. Why? It's categorically a crime of child abuse. I know. Why? What we have here is the Board's definition, first in Rodriguez-Rodriguez, and subsequently in Velazquez-Herrera, in which the Board defined a crime of child abuse as encompassing both intentional knowing injury to a child or criminally negligent acts or omissions that lead to an endangerment of the child's health and well-being. California's penal code prohibiting willful injury to a child. What are you quoting from? I'm sorry? What are you quoting from? That Board definition comes from Velazquez-Herrera, which I believe we submitted to this Court in a 28-J letter in early January. I can read the definition in its entirety, if that's helpful. It's at page 517 of the Board's decision in Velazquez-Herrera. But focusing on that element of endangerment, that's common between California's 273a)(b), prohibiting ---- But what I read in Velazquez-Herrera is, knowing records of criminally negligent acts or omissions constitutes maltreatment of a child or that it impairs a child's physical or mental well-being. Where is the language you were quoting from? That's at 517. I believe it is the same definition. It's Respondent's position that that prohibition of maltreatment through a criminally negligent act or omission is comparable to California's prohibition of endangerment of the child. That's what we have in this case. And it's clear that the Board employed a categorical approach because there was no reference to ---- I'm sorry, but I'm not seeing this act or omission language. Where is it? Page 517. I'm looking at page 17. I'm still not seeing it. I believe it's toward the bottom of the page, just in that conclusion. Well, I'll be fair, Counsel. I'm a little confused, too, because I agree with my colleague. It seems to me that this particular opinion does not suggest, as you are now suggesting, that one can arrive at this child abuse unless there's some injury, even slight. And I'm looking at page 517, and I don't see it. So we're not going to do very well unless you find it for me. Okay. I do believe it's at the bottom of page 517. Well, I'll read you the entire ---- No, no, no. 517 says conclusion, right? It has a conclusion, and it repeats the same definition I read you before. Okay. Right under conclusion, if I may just read, A crime of child abuse is defined as any offense involving an intentional, knowing, reckless, or criminally negligent act or omission. That's not on my page. I don't understand this. I do apologize, Your Honor. Perhaps we've not submitted the appropriate decision. This is Velazquez-Ferreira. Right. It's Velazquez-Ferreira. Page 517. I'm reading on page 517. Well, this is very mysterious, but go ahead. I do apologize. Perhaps it's just not the correct document that was submitted, but if we can proceed from the assumption that the Board has defined 237a2e in its entirety. It is here. I just see it now. All right. Okay. I apologize. No, it's my fault. Go ahead. Taking that definition as a whole and bearing in mind that that definition speaks to 237a2e in its entirety of crime of child abuse, crime of child neglect, the Board categorically set that definition of crime of child abuse as it's used in the INA against California's definition of willful harm or injury to a child. The common element here is that petitioner's conduct endangered the health and safety of his children. Those elements are prescribed by the INA. Therefore, petitioner has been convicted of a crime of child abuse. That was the Board's analysis. And here again, given the nature of petitioner's conduct, given the ages of his children at the time of this crime, there's simply no ---- No. Okay. Go ahead. Okay. Given the fact that Velazquez-Herrera is a published decision and given its parity with the Board's definition of a crime of child abuse in Rodriguez-Rodriguez, upon which the Board relied in the present case, Chevron deference is owed to the Board's definition of a crime of child abuse. But you're assuming, that's what I see where the pieces fall, that this reference to criminally negligent act or omission, then it goes on. That constitutes maltreatment of a child or that impairs the child's physical or mental well-being. And we know from the beginning of the opinion that, at a minimum, this definition encompasses convictions for offenses involving the affliction on a child of physical harm, even if slight, mental or emotional harm, including acts, injuries to morals, sexual abuse, and so on. And the California statute deals with endangerment, which would appear to preclude any of those. Not the mental harm or injury prong. That is the comparable piece. The children here were clearly harmed. That's not the question. The question isn't what happened here. The question is, does the California statute's discussion of endangerment have any harm element at all? Yes, it does. Why? The endangerment prong at the very end of that section. Why? An endangerment to the child. You take a baby and you put them in a situation in which they could be injured, but they're not. Where's the injury? The potential injury to the or the potential maltreatment of the child in an injury to the child. Potential, but it's not the statute. That's what I'm trying to say. The statute doesn't deal in potential. The Federal statute doesn't seem to deal in potentials. I believe that the Board here read that potential into California Penal Code 273a)(b). Now, excuse me. As defined in Velazquez-Herrera, do you not agree that there has to be some actual harm to the child? No, we do not agree. Why is that? We agree that that possibility. Where do you get that from in definition on page 512? The negligent act or omission that constitutes maltreatment. The act can be negligent, but that doesn't have anything to do with whether there is an actual injury of harm of some kind. In other words, the language that you're reading about negligent act or omission has to do with what creates the actual harm or injury, but there still has to be some, as on page 512 makes clear. No? Is that wrong? It's Respondent's position that that maltreatment prong encompasses the possibility of endangerment, which is set forth in California Penal Code 273a)(b). So it's your position that one only needs to cause or permit someone to be placed in a situation where they may be endangered, which is the back part of the California statute, and that that is the same as the federal statute? At present, under the board's definition, as set forth in Velazquez-Herrera, yes. Well, but let me ask you a question about that. Do I need to defer to the board's interpretation in this particular matter? Yes. Why? Chevron deference is owed to the board. All right. When do I have to give Chevron deference to the board? Here we have the benefit of a published board decision. Well, but this statute is clear. I can read it, and I don't see in that statute what the government is seeing. I see that this statute that is in front of us is a federal statute, and it requires some harm, at least slight. And now you're suggesting that it is not that, based on what the board says. I can't even see it in the written language in the statute. Well, perhaps the clarification comes in how the board is defining and applying harm in its definition. There is a distinction between an injury and other conduct which may harm the child. Here we have endangerment and maltreatment, both of which are harm under the board's definition. Well, but in this California statute, you don't even have to have endangerment. It just may be. Right. So how does that comport? It isn't a matter as was it their endangerment. It wasn't a matter, even if I take your definition, that all I have to have is endangerment but not a slight harm, just endangerment. But the California statute talks about may be, not even that it need be. This could be. Now, how does that comport on a categorical approach? Both definitions are exceedingly broad. And while the board's definition does not necessarily track line by line how California prohibits willful harm or injury to a child, at the end, the board's recognition is that the California statute doesn't require willful harm or injury to the child. That's the problem. You're putting words in the California statute that aren't there or that aren't only there. I see that my time has run. May I answer? Go ahead, please. California's prohibition of endangerment fits exactly within where the board has so broadly defined the possibility of maltreatment to the child. Well, I don't even see that the board's definition goes as far as you're saying. But let's assume that it does. Still, I mean, there's this other issue that I raised before, which is that the Federal statute actually talks of crime of child abuse and crime of child neglect. And as I understand it here, your position is that you're not arguing child neglect. You're arguing child abuse, right? But if your definition was as broad as you say it was, then what does child neglect mean? There's nothing left. Here, again, if I may take a minute to answer. The board's decision in Velazquez-Herrera speaks to INA 237a2e as a whole. No, it doesn't. It quite specifically says they're interpreting the term, quote, crime of child abuse to mean. That's all they're talking about. Here, Petitioner ---- In Velazquez-Herrera. That's all they're talking about. They're not talking about the rest of this statute. Do you disagree with that? Petitioner's removability, his ineligibility for cancellation of removal stems from his conviction for a crime of child abuse as defined at INA 237a2e. The board's definition in Velazquez-Herrera, which is where we'd start to see whether his conviction is categorically a crime of child abuse, speaks to that element of endangerment, which is at issue here. Okay. Therefore, if this Court wishes for the board to ---- A, I don't see that. It talks about maltreatment. It doesn't talk about endangerment. It doesn't ---- I don't see those as necessarily the same thing. So I don't know where you're getting that from. You're just saying it. But it's not in there. It's not in the opinion, is it? It's our position that those two parts are reconcilable and that it is in Velazquez-Herrera. Okay. If this Court decides to ---- Let me ask you one question, if I might, with the permission of the presiding judge. Do you say that this is a consistent decision? Supposing I don't think so. It's my understanding that you are even suggesting in that situation we should remand to allow the BIA to apply the modified categorical. Is that true? Or to simply expand on the applicability of Velazquez-Herrera. That would be entirely appropriate. Here we have the board's definition in Rodriguez-Rodriguez at the time the board considered Petitioner's appeal. It's our position that that definition is consistent with Velazquez-Herrera. What's that definition? The definition is set forth in Rodriguez-Rodriguez was any form of cruelty to a child's physical, moral or mental well-being. Okay. The board expanded on that definition in Velazquez-Herrera. Given the sequence of events here, this Court disagrees that the board's definition of 237A2E as a whole in Velazquez-Herrera renders conviction under California Penal Code 273 or 237AB categorically a crime of child abuse, then yes, remand would have to be appropriate to allow the board to address in the first instance how those definitions might sit one against the other. The answer to Judge Smith's question is yes? Yes. Thank you. All right. It took a while to get there. I apologize. There are several decisions here, and it's both are very broad. Thank you very much. Thank you very much, Your Honors. I'll give you one minute in rebuttal. Go ahead. Do you have anything to say? If you don't have anything to say, that's fine. Okay. Thank you very much. Thank you, counsel. The case of Pacheco-Fragozo is submitted.
judges: Thompson, Berzon, Smith